**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 09-318 |
| | ) | |
| vs. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| FRANCISCO J. QUINTANA, Warden, | ) | |
| | ) | |
| Respondent | ) | Re: ECF Nos. 11, 25 and 26. |

**<u>MEMORANDUM OPINION</u>**

## I.  INTRODUCTION

Steven Harris ("Petitioner") filed a Petition for Writ of Habeas Corpus (the "Petition")

pursuant to 28 U.S.C. § 2241 against Archie B. Longley, the Superintendent of the Federal

Correctional Institution at McKean ("FCI-McKean"),[1] challenging the calculation of his federal

sentence.[2]   Petitioner alleges that he is entitled to credit against his federal sentence for time that

he spent in state custody.   As relief, Petitioner seeks additional credit against his federal sentence

for the period of September 12, 2006 (the date on which Petitioner was sent to a Maryland state

prison from a federal prison) through January 4, 2008 (the date on which Maryland state

authorities released Petitioner to federal authorities, after Petitioner completed the Maryland state

sentence).   Respondent contends that Petitioner's claims are without merit because the Federal

Bureau of Prisons ("BOP") properly computed his federal sentence, including the date of

---

[1]  Archie B. Longley replaced Francisco J. Quintana as Warden at FCI-McKean after Mr.
Quintana retired.

[2]   Since the filing of the Petition, Petitioner has been transferred to the Federal Correctional
Institution at McDowell ("FCI-McDowell").   Pursuant to Fed.R.Civ.P. 25(d), Karen Hogsten, as
the Warden of FCI-McDowell is automatically substituted as the Respondent in this action.

commencement and his prior custody credit.

For the reasons that follow, after considering the facts and legal arguments of both parties, the Court finds that BOP did not abuse its discretion in finding that its error (of sending Petitioner to a federal prison, immediately after Petitioner's federal sentence was imposed, while he still had time to serve on his Maryland state sentence) did not require Petitioner's federal sentence to have "commenced" within the meaning of section 3585(a) on the date on which Petitioner's federal sentence was imposed, as claimed by Petitioner.   Therefore, the Petition is denied.

## II.  FACTUAL BACKGROUND

In September 1996, Petitioner was sentenced by a Maryland state court.   In May 1998, Petitioner was released on parole from the Maryland sentence.   In March 2003, based upon Petitioner violating the terms of his probation/parole, he was sentenced by the Maryland state court to three additional years of incarceration to begin effective January 15, 2003.

While serving the three year Maryland sentence, Petitioner escaped from a Maryland prison.   On March 31, 2004, while Petitioner was on escape status, he was arrested by Maryland state authorities pursuant to state criminal firearms charges (Circuit Court for Baltimore City Case No. 104117037).   ECF No. 21-2 at ¶¶ 4(a)(7); 5(f) (referencing PSR, at pp. 2-3, at ¶ 7); ECF No. 21-3 (Case Information, Circuit Court of Maryland, attached to the Declaration of Patricia Kitka).

On August 5, 2004, a federal indictment was issued charging Petitioner with federal drug and firearms offenses.   The Pre-Sentence Report ("PSR") describes the federal offense as

follows:

> On March 31, 2004, Baltimore Police officers executed a search and seizure warrant at (address omitted) in Baltimore City, Maryland. Upon entry, the defendant was found alone inside the house. The search revealed, among other things, 19 ziplock bags of cocaine base underneath a couch cushion where the defendant was seated. The cocaine base had a net weight of approximately six (6) grams. Also recovered from underneath the kitchen table was a loaded Astra Model 357, 357 Magnum caliber revolver, serial number R37255.

See ECF No. 21-3, at ¶¶ 4(a)(7); 5(h) (referencing PSR, at pp. 2-3, ¶ 7).

On August 10, 2004, a federal writ of habeas corpus ad testificandum was issued, compelling Petitioner to appear in the United States District Court for the District of Maryland in connection with the criminal charges issued in Criminal Case No. 1:04-CR-00381 (D. Md.).   On September 10, 2004, he was borrowed by federal authorities from Maryland state authorities, pursuant to a federal writ of habeas corpus, for an initial appearance in federal court in connection with the criminal charges issued in federal Criminal Case No. 04-CR-0381 (D. Md.). On September 10, 2004, at the conclusion of his initial appearance proceeding, he was returned to Maryland state authorities in satisfaction of the federal writ of habeas corpus.   See ECF No. 21-3 at 26 (United States Marshals Service Form 129, attached to the Declaration of Patricia Kitka)(under the column "Status" is "WHCAP" which apparently stands for "Writ of Habeas Corpus Ad Prosequendum").

On September 22, 2004, the Maryland state criminal firearms charges in Case No. 104117037 were nolle prossed; however, Petitioner remained in Maryland state custody to complete service of the state sentence he was serving at the time he escaped.   On October 15, 2004, a federal writ of habeas corpus ad prosequendum was issued compelling Petitioner's

appearance in federal court.   ECF No. 21-3 at 21.   On October 29, 2004, Petitioner was again

borrowed by federal authorities from state authorities pursuant to a federal writ of habeas corpus

ad prosequendum.   ECF No. 21-3 at 26 (entry in "Status" column for 10/29/2004 shows

"WHCAP").

     On June 9, 2005, Petitioner pled guilty in the United States District Court for the District

of Maryland to charges of Possession with Intent to Distribute Cocaine Base and Aiding and

Abetting and Possession of a Firearm in Furtherance of Drug Trafficking (Counts 1 and 3), in

violation of 21U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. §§ 2 and 924(c).   On August

24, 2005, following the guilty plea, the federal court sentenced Petitioner to a 120 month term of

imprisonment (two consecutive 60 month terms), with a four year term of supervised release to

follow.   The federal court recommended that Petitioner participate in any substance abuse

program for which he may be eligible. The federal sentencing court was silent with respect to

whether it intended the federal sentence to run concurrently or consecutively with the Maryland

state sentence that Petitioner was serving at the time he was borrowed via federal writ for

disposition of the federal criminal charges. The federal Judgment and Commitment Order

reflected that the federal criminal offense conduct concluded on March 31, 2004.   See ECF No.

21-4 (Federal Judgment and Commitment Order).

     On August 30, 2005, the United States Marshals Service ("USMS"), under the mistaken

belief that Petitioner was in primary federal custody, requested the BOP to designate him to a

federal correctional institution for service of his federal sentence. See ECF No. 21-3 at 26 (entry

of 8/30/2005 has "DESIG" in the column marked "STATUS").[3]   On September 28, 2005,

Petitioner was designated to the Federal Correctional Institution in Elkton, Ohio ("FCI-Elkton").

ECF No. 21-4 at 10 (Inmate History Admission-Release, entry dated 9/28/2005 and indicating

"DESIGNATED, AT ASSIGNED FACIL").

In August 2006, FCI-Elkton received information that Petitioner's Maryland state

sentence had yet to be satisfied. Upon verification of records, it was discovered that the USMS

erroneously requested the BOP to designate him to a federal institution for service of the federal

sentence instead of returning him to state authorities in satisfaction of the federal writ of habeas

corpus ad prosequendum.   See ECF No. 21-3 at ¶ 5(s).   On September 12, 2006, Petitioner was

---

[3]     Although not explained by the parties, it appears that the genesis of the error in incorrectly
determining Petitioner to be in primary federal custody was an order issued by the federal trial
court on October 29, 2004, when the federal trial court ordered that the Petitioner's "waiver of
right not to be returned to original place of imprisonment [i.e., a Maryland state prison] prior to
trial in federal court is withdrawn and the defendant is placed in federal custody pending [a
federal] trial as to Steven Harris."   ECF No. 21-3 at 21 (Docket entry 16).   The USMS
apparently took the order to mean that Petitioner was now in primary federal custody and
thereafter determined that Petitioner was "HELD IN FED CUSTODY" as indicated in the
Remark Column of the U.S.M.S. Form 129.   ECF No. 21-3 at 26 (Status Column entry dated
10/29/2004 and Remark column).   Thereafter, apparently the USMS had to transport Petitioner
to the federal sentencing court on May 6, 2005 as there was a hearing held there on that date
regarding Petitioner's motion to suppress, and as of May 5, 2005, the USMS has Petitioner's
status as "READMIT" which apparently means readmitted to U.S. Marshals Custody and the
remark in the column is "TOT USMS Custody" which apparently means "turned over to U.S.
Marshals Custody."   Thereafter, the U.S.M.S. has Petitioner's status as designated Awaiting
Trial as of May 5, 2005, and then on June 9, 2005 Awaiting Sentencing, and on August 24, 2005
Awaiting Judgment and Commitment, and on August 30, 2005, Awaiting Designation to a BOP
facility, and on September 19, 2005, Awaiting Being Moved to his designated federal prison and
then on September 28, 21005 "RL-BOP" which we take to mean released to the BOP from the
USMS custody.   As discussed below, regardless of which errors the federal authorities made in
determining whether Petitioner was in their primary custody, such actions on the part of the
federal authorities were powerless to divest the Maryland state authorities of their primary
custody over Petitioner.

returned to the Maryland Department of Corrections to complete service of his state term of imprisonment.   ECF No. 21-3 at 26 (entry dated 9/12/2006).

On January 4, 2008, upon completion of the state sentence, the Maryland Department of Corrections released Petitioner to the USMS for service of his federal sentence.   ECF No. 21-3 at 26 (entry dated 1/4/2006 and indicating that "DOC ROLLOVER" and indicating under the "STATUS" column "READMIT" presumably meaning "readmitted" to the BOP's custody). On July 18, 2008, Petitioner was designated to FCI-McKean.

## III.   PROCEDURAL HISTORY

After some preliminary proceedings, the Petition was formally docketed in April 2010, along with a Brief in Support.   ECF Nos. 11 and 12.   Petitioner contends that he should receive credit against his federal sentence for the time he served from September 12, 2006 (the date upon which the BOP sent Petitioner back to Maryland state authorities after having realized its mistake) up to January 4 or 5, 2008 (the date he was released by Maryland state officials to the federal authorities in order for Petitioner to start serving his federal sentence) (referred to herein as "the disputed time").   Petitioner does not controvert that all of the disputed time was credited against his Maryland state sentence.

After being granted several extensions of time to answer, the United States Attorney's Office filed its Answer, accompanied by relevant records from both the BOP and the Maryland Department of Corrections.   ECF No. 21.   The Answer explained that the BOP denied Petitioner credit against his federal sentence for the disputed period, relying upon the rule against double credits found in 18 U.S.C. § 3585(b), because this time was already credited against

6

Petitioner's Maryland state sentences.[4]

Petitioner also filed a notice of change of address, indicating that he had been transferred to FCI-McDowell in Welch, West Virginia.   ECF No. 22.[5]   The parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF No. 8 and No. 17.   The case was transferred to the undersigned in June 2011.   ECF No. 24.

In January, 2012, Petitioner filed a motion to expedite this case.   ECF No. 25.   In May, 2012, Petitioner filed a second motion to expedite.   ECF No. 26.   These two motions to expedite are denied as moot, in light of the ruling that follows.

## IV.  DISCUSSION

### A.  APPLICABLE FEDERAL SENTENCING STATUTES AND BOP POLICIES

#### 1.  Relevant Statutes and BOP Policy

The BOP is the federal agency responsible for implementing and applying federal law concerning the computation of federal sentences.   See, e.g., United States v. Wilson, 503 U.S. 329, 331 (1992); 28 C.F.R. § 0.96.   The following statutes are relevant:   18 U.S.C. § 3584(a),

---

[4]   However, Petitioner contends that Section 3585(b), by its plain language, applies only to claims for credit concerning time spent in custody **prior** to the commencement of the federal sentence and he is not seeking credit for time spent in custody prior to the commencement of his sentence, rather he only seeks credit for time following the initial erroneous commencement of his federal sentence.

[5]   Such a transfer outside of this District does not divest this Court of jurisdiction to act on the Petition.   Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (internal quotation marks and citations omitted);   United States v. Edwards, 27 F.3d 564 (Table), 1994 WL 285462, a t *1 (4th Cir. 1994) ("[S]ubsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction.").

which governs a federal court's authority to order that a federal sentence be served concurrently

with a state sentence; 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence

commences; and 18 U.S.C. § 3585(b), which governs the grant of credit against a federal

sentence for time spent in custody prior to trial.   The BOP's policies regarding sentence

computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS

5880.28").   Also relevant to this case is Program Statement 5160.05, Designation of State

Institution for Service of Federal Sentence ("PS 5160.05").[6]

## 2.   Determination of Whether a Federal Sentence is Concurrent with or Consecutive to a State Sentence

Section 3584(a) of Title 18 of the United States Code provides, in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an
> undischarged term of imprisonment, the terms may run concurrently or
> consecutively.… Multiple terms of imprisonment imposed at different times run
> consecutively unless the court orders that the terms are to run concurrently.

The BOP interprets the phrase "an undischarged term of imprisonment," to include, in relevant

part, any lawfully imposed state sentence or revocation of a conditional release term (probation,

parole, etc.).   PS 5880.28, Chapt. 1, Page 31.

The BOP presumes that federal and state sentences are to be served consecutively unless

the federal sentencing court orders that the sentences are to be served concurrently.   See PS

---

[6]  BOP Program Statements are internal agency guidelines, and in many cases the policies set
forth therein are "akin to an interpretive rule."   Reno v. Koray, 515 U.S. 50, 61 (1995).   The
BOP policies at issue in this case are contained in Program Statements and are not also published
in any federal regulation, and thus are not subject to public notice and comment before adoption.
Therefore, the policies are not entitled to the deference described in Chevron U.S.A. v. Natural
Resources Defense Council, 467 U.S. 837, 842 (1984).   Blood v. Bledsoe, 648 F.3d 203, 208 n.7
(3d Cir. 2011).   They are, however, entitled to "some deference" from this Court so long as they
(footnote continued . . .)

5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7.   The BOP also recognizes that a federal sentencing court "may, from time to time, order concurrent service of the federal sentence at some time after its imposition.   This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition."   PS 5160.05, Page 5.

Importantly, the BOP also has the authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate.   Barden v. Keohane, 921 F.2d 476, 482-83 (3d Cir. 1990); PS 5160.05, Pages 5-7.   For example, the BOP recognizes that the following might occur:   the state had primary custody over an inmate, his federal sentence is imposed first, the federal sentencing court does not order that the federal sentence be served concurrently with any state sentence, and then the state court subsequently imposes a state sentence and orders that it is to be served concurrently with the federal sentence. Id. at 478-83; PS 5160.05, Pages 5-7.   When this occurs, the inmate typically will have served his state sentence at a state institution and upon release is sent to federal custody for service of his federal sentence.   The inmate is permitted to request that the BOP retroactively designate the state institution as the correctional institution where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), which in effect amounts to the imposition of a retroactive concurrent federal sentence.   Id. at 478-83; PS 5160.05, Pages 5-7.   The BOP may

---

set forth "a permissible construction of" the statutes at issue.   Id. at 207-08.

also consider the state court's sentencing order as a request that the inmate be permitted to serve his federal and state sentences concurrently.   PS 5160.05, Page 7.

Although the BOP must consider the inmate's request for concurrent service of sentences, it is not obligated to grant the request.   <u>Barden</u>, 921 F.2d at 478 n.4 ("We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently."); PS 5160.05, Page 6 ("there is no obligation under <u>Barden</u> for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.").   The BOP will review the federal sentencing court's Judgment and Commitment Order, the state sentence data records, and any other pertinent information relating to the federal and state sentences.   PS 5160.05, Pages 5-7.   BOP policy further instructs:

> In making the determination, if a designation for concurrent service may be appropriate (*e.g.*, the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the [The Regional Inmate Systems Administrator ("RISA")] will send a letter to the sentencing court (either the Chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections.   Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.
>
> *If, after 60 days, a response is not received from the sentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency*.

PS 5160.05, Page 6 (emphasis added).

### 3.   Calculation of the Date Upon Which a Federal Sentence Commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences, and it provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

A federal sentence cannot commence earlier than the date on which it was imposed.   PS 5880.28, Chapt. 1, Page 13; United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998); Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983).

When an inmate is only facing service of a federal sentence, the application of 18 U.S.C. § 3585(a) is straightforward.   The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed.   PS 5880.28, Chapt. 1, Page 12.   Oftentimes, however, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is subject to a state sentence.   In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences.   At common law, the "primary custody" doctrine (sometimes referred to as "primary jurisdiction" doctrine) developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign.   The doctrine was recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922).   See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

In relevant part, the primary custody doctrine provides that *the sovereign that first arrests an individual has primary custody over him*.   That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him.   The sovereign with primary

11

custody *is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction*.   See, e.g., Bowman, 672 F.2d at 1153-54.   Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F.Supp. at 622 (citing United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980); and Roche v. Sizer, 675 F.2d 507, 510 (2d Cir. 1982) (federal government relinquished jurisdiction by releasing prisoner on bail)).   "Determination of priority of custody and service of sentence between the state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns."   Warren, 610 F.2d at 684-85 (citing Ponzi, 258 U.S. at 261-62 (locating decision to relinquish jurisdiction in executive power)).   See also Bowman, 672 F.2d at 1153-56.   The relinquishment of jurisdiction is an executive function, not a judicial function.   Id.

Although not required to do so, the BOP has incorporated the common law primary custody doctrine into its policies.   Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, the federal government is entitled to have that inmate serve his federal sentence upon imposition.   In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate his federal sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence.   PS 5880.28, Chapt. 1, Pages 12-13.

If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing.   The BOP will commence the inmate's federal sentence under 18 U.S.C. § 3585(a) when the state relinquishes its priority and releases him to federal custody.   PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.   If, however, the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently with* any state sentence, the BOP will return custody of the inmate to the state, commence the federal sentence, and designate the state facility as the place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b).   PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

Finally, the BOP acknowledges that there are occasions when an inmate will have been improperly designated to a federal detention center for commencement of his federal sentence, when he should have been returned to, or remained in, state custody for the completion of a state sentence that must be served first.   The BOP directs that upon discovery of the error, the BOP staff shall "make every effort to return the inmate to state custody," and the USMS will lodge a detainer with state authorities.   PS 5160.05, Pages 11-12.   When such an error occurs, the BOP directs that the federal sentence should be considered as *not* having commenced since the earlier transfer to federal custody was in error.   PS 5160.05, Page 12.   If the federal sentencing court subsequently recommends concurrent service of the federal and state sentences, the case will be referred to the appropriate RISA for consideration of granting the prisoner a nunc pro tunc designation.   PS 5160.05, Pages 5, 12.

### B.  CALCULATION OF PETITIONER'S SENTENCES BY THE BOP

Based upon information received by the BOP from the Maryland Department of

Corrections, it appears that Petitioner received a three year sentence from the Maryland state

courts and that Petitioner's three year state sentence was computed as commencing on January 1,

2003.   He escaped from state custody on December 22, 2003, and was returned to state custody

on September 12, 2006.   On January 4, 2008, he was released from state custody to a federal

detainer in order to serve the instant federal sentence.   Petitioner received credit against his state

sentence for each day served between March 5, 2003 (i.e., the date his state parole was revoked

and he was sentenced to three years) and December 22, 2003 (i.e., the date whereon Petitioner

escaped from his Maryland prison) and from September 12, 2006 (i.e., the date on which the

BOP returned Petitioner to Maryland authorities to finish his state sentence) through January 7,

2008 (i.e., the date on which his Maryland sentence ended and he began to serve the instant

federal sentence).   See ECF No. 21-4 at 16 (e-mail dated September 16, 2010, from Executive

Director, Maryland Department of Public Safety and Correctional Services ("DPSCS")

Commitment).[7]

Petitioner's federal sentence was computed at the BOP's Designations and Sentence

---

[7]   We note that there is some minor discrepancy in crediting Petitioner's state and federal
sentences.   In an email from Maryland state authorities to federal authorities, the Maryland
authorities seem to indicate that Petitioner received credit against his Maryland state sentence
until January 7, 2008.   ECF No. 21-4 at 16 ("Each day confined between . . . 9/12/2006 and
1/7/2008 is directly attributable to the [Maryland state] sentences displayed below.").   The BOP
started to credit Petitioner's federal sentence from January 4, 2008.   ECF No. 21-3 at 8, ¶ y.
Because this discrepancy is in favor of Petitioner, i.e., he apparently received credit against both
his federal and state sentences from January 4 to January 7, 2008, we need not resolve this
discrepancy.

Computation Center ("DSCC").   Petitioner's sentence computation reflects that his federal sentence commenced on January 4, 2008, the date that he was released by the state Department of Corrections to the USMS. He was credited against his federal sentence with prior custody credit for time served from March 31, 2004 (the date that he was arrested by state authorities after he had escaped from state custody) through September 11, 2006 (the day before he was returned to the State Department of Corrections after the erroneous designation to FCI-Elkton, Ohio), that was not credited against any other sentence. His projected satisfaction date (from his federal sentence) was computed as April 9, 2014.

On September 8, 2008, Petitioner filed a Request for Administrative Remedy with the Warden at FCI-McKean in which he stated that his federal sentencing court directed that his federal sentence commence upon imposition. He stated that after his federal sentence commenced, he was erroneously returned to the state of Maryland to serve a violation of parole ("VOP") sentence. He alleged that the state of Maryland credited him with three years and three months against the state VOP sentence, and returned him to federal custody to complete service of his federal sentence. He argued that his federal sentence should have continued to run after he was returned to state authorities. As relief, he requested that his federal sentence run continuously from the date it was imposed.   ECF No. 21-2 at 8 (Administrative Remedy Case No. 507649).

In a response dated September 17, 2008, Petitioner's request was denied. It was explained that on August 24, 2005, his 120 month federal sentence was imposed, and he was subsequently designated to FCI-Elkton. However, in August 2006, FCI-Elkton received notification from the Maryland Department of Public Safety and Correctional Services advising that he had time

remaining on his state sentence. The Maryland state authorities requested that Petitioner be returned to complete service of his state sentence.   In the response, the FCI-McKean authorities explained that Petitioner was returned to state authorities and, upon completion of his state sentence, he was released to federal authorities.   Petitioner was advised that his federal sentence was not ordered to run concurrent with the undischarged portion of his state sentence.   Petitioner was advised that the DSCC was in the process of verifying his release date from the state sentence, so his federal sentence would be effective the date of his release from his state sentence.

Petitioner filed an appeal to the Regional Office and was denied the requested credit at this level.   Petitioner then appealed to the Central Office and again was denied the requested credit.   In his appeal to the Central Office, he argued that Maryland had no authority to take primary custody over him after the federal sentence was imposed. He asserted that once imposed, his federal sentence should have continued to run uninterrupted. As relief, he requested credit against his federal sentence from September 12, 2006 through January 1, 2008.

In a Response to Petitioner's Central Office Administrative Remedy Appeal dated September 3, 2009, Petitioner's Appeal was denied. He was advised that after the federal sentence was imposed, a request to the BOP for his designation to a federal prison was made in error. Pursuant to the interests of comity, he should have been returned to state authorities to complete the state sentence he was serving (at the time he was borrowed by federal authorities pursuant to a federal writ of habeas corpus ad prosequendum). Thus, once this error was discovered, he was promptly returned to state authorities to complete his state sentence.

Petitioner was advised that his federal judgment and commitment order was silent regarding concurrency.   Under 18 U.S.C. § 3584(a) a federal court's silence regarding concurrency is interpreted as an intent to impose a consecutive federal sentence. Petitioner was advised that a nunc pro tunc designation of the state prison for service of his federal sentence could not be made to commence his federal sentence upon imposition, prior to the satisfaction date of his state sentence. He was advised that his federal sentence did not start upon imposition and stop running upon his return to state authorities. He was advised that his federal sentence commenced on January 4, 2008, when state authorities released him to federal authorities. He was advised that the time he requested to have treated as federal prior custody credit from September 12, 2006 through January 3, 2008, could not be treated as such under 18 U.S.C. § 3585(b), because this time was applied against his state sentence.   ECF No.   21-2 at 14 to 15.

### C.  THE BOP DID NOT ABUSE ITS DISCRETION IN DETERMINING THE START DATE OF PETITIONER'S FEDERAL SENTENCE.

Initially we note that our standard of review of the BOP's actions in determining the commencement of and the crediting of Petitioner's federal sentences is limited to determining whether the BOP abused its discretion.   Espinoza v. Sabol, 558 F.3d 83, 91 (1st Cir. 2009) ("Most circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion.").   Furthermore, this review of the BOP's actions to determine whether the BOP abused its discretion is limited to determining whether on the record before the BOP, it abused its discretion.   Malone v. Department of Treasury, 70 F.3d 1290 (Table), 1995 WL 675520, at *1 (Fed. Cir., 1995) ("Mr. Malone filed no response to the AJ's order to show cause for his apparent untimely filing. He offered no explanation of his failure to respond, either in his

17

appeal to the full Board or to this court. On the record **before the Board** we discern no abuse of discretion in the dismissal of Mr. Malone's appeal for untimely filing.") (emphasis added); Gao-Ay v. I.N.S., 931 F.2d 59 (Table),1991 WL 59606, at *4 (9th Cir. 1991) ("Under the circumstances, the Board did not abuse its discretion in denying a remand **based on the record before it**.") (emphasis added);   N.L.R.B. v. Alterman Transport Lines, Inc., 465 F.2d 950, 952 (5th Cir. 1972) ("Based on the record before the Board, it cannot be said that it was an abuse of discretion to find that these two groups of drivers have a separate community of interests, justifying separate bargaining units.").   In other words, it would be anomalous indeed were this Court to conclude that the BOP abused its discretion in reaching the decision that it did based, not on the record before the BOP, but based on evidence adduced for the first time before this Court or based on arguments not made to the BOP but only made for the first time before this Court.   We also note that the BOP is presumed to follow the law and so it is Petitioner's burden to show otherwise, i.e., to show that the BOP abused its discretion based on the record before the BOP.   See, e.g., Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations.");   United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly.").

In addressing any sentencing computation issue in a federal habeas action, a district court must consider whether the BOP abused its discretion in determining: (1) when the federal sentence commenced, governed by 18 U.S.C. § 3585, and, (2) the extent to which the BOP gave

a federal habeas petitioner credit for time spent in custody prior to commencement of the sentence, governed by 18 U.S.C. § 3585(b).   See, e.g., Demartino v. Thompson, 116 F.3d 1489 (Table), 1997 WL 362260, at *2 (10th Cir. 1997); Dutton v. U.S. Attorney General, 713 F.Supp.2d 194, 199 (W.D.N.Y., May 20, 2010)("In computing a Federal sentence, two separate decisions must be made: (1) when the Federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence.   For offenses committed on or after November 1, 1987, as Dutton's was, commencement of a Federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).") (citation omitted).

### 1.   Calculation of the Date Upon Which a Federal Sentence Commences

As noted previously, the date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which states:

> **(a) Commencement of sentence. –** A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

It is this statute, and the meaning of this statute, that is at the heart of the instant controversy.

We find that the BOP did not abuse its discretion in finding that Petitioner was continually in the primary custody of the state of Maryland from at least March 3, 2003 (the date on which his Maryland parole was revoked and he was imprisoned by the Maryland state authorities) until January 4, 2008 (the date on which the Maryland state authorities released Petitioner upon completion of his Maryland sentences to his federal detainer in order to commence his federal sentence).   Thus, we reject any of Petitioner's arguments to the contrary.

See, e.g., ECF No. 12 at 9.   We note that Petitioner cites no evidentiary support for his

contention that after the federal court sentenced him, he was thereafter in the primary custody of

the federal authorities, see id., and thus he fails to sustain his burden to rebut the presumed

correctness of the BOP's actions and determination that Petitioner was in the primary custody of

the state of Maryland at the time he was sentenced by the federal court.   In fact, the evidentiary

record is to the contrary, indicating that at the time of Petitioner being taken into custody by the

federal authorities, which was accomplished by means of a writ of habeas corpus ad

testificandum, on August 10, 2004, he was clearly in the primary custody of the Maryland state

authorities because otherwise no writ would have been needed by the federal authorities.   See

ECF No. 21-3 at ¶¶ 5(a) to 5(i).   See also Wise v. Chester, No. 09-3283, 2010 WL 4180678, at

*3 (D.Kan., Oct. 20, 2010) ("Moreover, the reference on page two of the presentence report to

petitioner's transfer into federal custody on April 12, 2005 is correct in that it refers to the

temporary transfer of custody pursuant to a writ of habeas corpus ad prosequendum. A prisoner

detained pursuant to a writ of habeas corpus ad prosequendum is considered to remain in the

primary custody of the sending sovereign unless and until that sovereign relinquishes jurisdiction

over the person. Hence, this temporary transfer of custody pursuant to the writ of habeas corpus

ad prosequendum is further proof that petitioner's state sentence did not expire on April 12, 2005

because if it had, there would have been no need for the writ.") (citations omitted); Allen v.

Stansberry, No. 1:09cv631, 2010 WL 3671392, at *4 (E.D.Va. Sept. 14, 2010) ("Had Idaho

believed that Weekes was already in their primary custody in spite of his temporary presence in

the hands of federal authorities, they would not have needed to employ a writ of habeas corpus ad

prosequendum in order to have him returned to them.").

Petitioner remained in the primary custody of the Maryland state authorities throughout the time that he was held in BOP facilities or USMS custody because even if the federal authorities had mistakenly thought he was in their primary custody, there was nothing that the state of Maryland did (or, at least nothing that Petitioner points to which supports the contention that the Maryland executive authorities did anything) to relinquish their primary custody over Petitioner.   In fact, no matter what errors the BOP made or what the federal officials did, they were powerless to divest the Maryland state executive authorities of their primary custody or primary jurisdiction over Petitioner.   See, e.g., Fisher v. Holinka, 323 F.App'x 451, 453 (7th Cir. 2009) ("And contrary to Fisher's assertions, the BOP's misclassification of him as a 'designated' inmate, which the BOP recognized and corrected twelve days later, did not strip Arizona of its jurisdiction over him-only the sending authority (Arizona, in this case) can relinquish primary jurisdiction. See Cole, 416 F.3d at 897 ('Primary jurisdiction continues until the first sovereign relinquishes its priority in some way.')").

## 2.   What is the Meaning of "Commence" under 18 U.S.C. §3585?

Here, we are confronted with the situation where the BOP erroneously designated Petitioner to a federal facility for Petitioner to begin to serve his federal sentence, while he was yet in the primary custody of the Maryland state authorities, contrary to the doctrine of primary custody, which the BOP has incorporated into its policies.   The question to be answered is what is the legal significance of this erroneous designation/determination by the BOP.   There are at least two possible interpretations.   One interpretation, and the one Petitioner apparently argues

for, is that the plain language of 18 U.S.C. § 3585(a), governs and because Petitioner was, albeit erroneously, "received in custody . . . to commence service of [his federal] sentence at, the official detention facility at which the sentence is to be served" his federal sentence commenced on the date of his federal sentencing and so he was entitled to credit against his federal sentence from September 12, 2006 (the date upon which the Federal authorities returned Petitioner to the Maryland state authorities to complete his Maryland state sentence) until January 4, 2008 (the date on which the Maryland state authorities released Petitioner to federal authorities and he was deemed by the BOP to only then have commenced his federal sentence).   See Brief In Support of the Petition, ECF 12 at 4 ("it was the time spent in state custody from September 12, 2006 to January 5, 2008 that is in dispute.").

The other interpretation is that the BOP erred in initially determining that Petitioner's federal sentence commenced, and the BOP had authority and discretion under the statute to retroactively determine that Petitioner's sentence had not commenced as of the date BOP originally said it did and that the sentence actually did not commence until the second corrected date the BOP said it did.

Unfortunately there does not appear to be mandatory precedential authority from the United States Court of Appeals for the Third Circuit on the correct interpretation of the statute. There is however, non-precedential authority from the Court of Appeals on this issue. Boston v. Attorney General of the United States, 210 F.App'x 190 (3d Cir. 2006); Allen v. Nash, 236 F.App'x 779 (3d Cir. 2007).   Unfortunately, the two cases that appear to be on point appear to point in different directions in answering this question.   Boston, 210 F.App'x at 192 (relying on

the plain language of Section 3585(a) and its "straightforward determination" to find that the petitioner's sentence commenced on the date he was erroneously designated by the BOP to a federal facility and, implicitly finding that BOP did not have authority to correct its mistake and determine a different date for commencing the petitioner's federal sentence); Allen, 236 F.App'x at 783 ("Because the designation to USP-Lewisburg was in error, it did not operate to commence Allen's federal sentence. The BOP did not have primary jurisdiction over Allen until July 20, 2000."). Regrettably, the Allen decision did not cite to or distinguish the Boston decision.[8] Our task is made more difficult insofar as neither party has cited to the two cases in their filings to this Court. Our independent research uncovered the cases. Because neither case is precedential, the two cases only constitute persuasive authority. Prudential Prop. & Cas. Ins. Co. v. Jefferson, 185 F.Supp.2d 495, 499 n. 1 (W.D.Pa.2002) ("An 'unrreported-non precedential' opinion [of the Third Circuit] is not binding authority, but may be cited as persuasive authority.") (citations omitted). As such, these opinions are authoritative only to the extent that they are persuasive. Dantzler v. Beard, Civ.A. No. 05-1727, 2007 WL 5018184, at *3 n.3 (W.D.Pa., Dec. 6, 2007) ("To the extent that the holding of the court in *Clonce* is inconsistent with the holding herein, the Court notes *Clonce* is not mandatory authority and hence is only persuasive authority. As such, it is authoritative only to the extent persuasive and this court is not persuaded by its reasoning."). Without mandatory authority, we must discern a rule that rationally resolves the dispute under the law.

---

[8]   We are not particularly surprised that the Allen decision did not cite to Boston as it does not appear that the parties before the Allen panel mentioned Boston, in their briefs to the Allen panel.

### a. Section 3585(a) is Ambiguous.

We begin with first principles.   This case concerns the proper interpretation of Section 3585(a), i.e., when did Petitioner's federal sentence "commence."   We note that the bedrock principle in statutory construction is that where the language is not ambiguous, we must give effect to the plain language.   See In re Visteon Corp., 612 F.3d 210, 231 (3d Cir. 2010) ("a court must give effect to a statute's unambiguous plain language").   The Boston panel apparently was convinced that there is no ambiguity to the language of Section 3585(a) when it referenced "the straightforward determination under 18 U.S.C. § 3585(a), of the commencement of the federal sentence."   Boston, 210 F.App'x at 192.   However, in accord with the implicit holding of Allen, we respectfully find that there is a latent ambiguity with respect to the language of Section 3585(a).   "A latent statutory ambiguity is apparent only when a statute's language is applied to particular facts, and is not apparent on the face of the statute."   3A Singer, Sutherland Statutory Construction, § 66:3 n. 63 (7th ed.) (hereinafter "__ Sutherland § __"). We find there to be a latent ambiguity in Section 3585(a) for the following reasons.   First, it seems to us that the language of Section 3585(a) did not contemplate the possibility of the BOP making a mistake in designating when a sentence commences and so when applying the statutory language to such a factual situation as this, the statutory language reveals a latent ambiguity, i.e., whether the sentence commences when the BOP first says it commenced or does it commence only later after the BOP discovers its mistake and then nunc pro tunc deems the federal sentence to have not commenced (when BOP first erroneously determined it to have commenced) but only to have commenced at some later point.

Secondly, this finding of latent ambiguity is bolstered by the fact that courts or different panels of the same court have construed this statute in both ways,[9] i.e., that the federal sentence commences when the BOP first erroneously deemed it to have commenced, and other courts/panels have determined that the federal sentence really commences only when the BOP deems it to have commenced after correcting its earlier erroneous determination.   Compare Boston, 210 F.App'x at 190 (statute requires commencement of the federal sentence when BOP erroneously deemed the federal sentence to have commenced by designating the prisoner to a facility and the prisoner awaits transportation to that facility); Weekes v. Fleming, 301 F.3d 1175, 1177, 1179 (10th Cir. 2002) (same) with Allen 236 F.App'x 783 (concluding that BOP's later determination of when the federal sentence commenced which corrected a prior erroneous BOP commencement date was "authorized by the statute");   Binford v. United States, 436 F.3d 1252 (10th Cir. 2006) (finding the federal sentence never began until the BOP corrected its error and deemed his sentence to have commenced not when the prisoner was first mistakenly delivered to the BOP but only after he was returned to the state authorities and his state sentence was completed and thereafter was returned to BOP).

Thus, we are satisfied that notwithstanding the apparently unambiguous language of 18 U.S.C. 3585(a), there is a latent ambiguity in that language as to when a sentence shall be deemed to have commenced in situations such as the one present before the Court, namely, where the BOP erroneously concludes that a federal sentenced convict is in the primary custody of the federal government and erroneously designates a federal prison and receives him in that

---

[9]   See, e.g., 2A Sutherland, § 46:4 ("The fact that a statute has been interpreted differently by

(footnote continued . . .)

25

prison to serve his federal sentence but the federal convict is and was actually in the primary

custody of the state authorities and should have been serving his state sentence while being held

in the federal prison.

### b. The BOP'S construction of § 3585(a) is reasonable.

Having satisfied ourselves that the statute at issue has a latent ambiguity, the next

question to be asked is: how should the ambiguity be resolved in the context of the pending

Petition. "When a statute contains latent ambiguities despite its superficial clarity, the court may

turn to the legislative history or other aids for guidance."   2A SUTHERLAND § 46:4.   Having

many interpretative aids available to us, the next question is: to which interpretative aids ought

we to turn first.   The United States Supreme Court has instructed that we turn first to the

administrative agency charged with applying the statute to see if that agency has resolved the

ambiguity.   See Holly Farms Corp. v. N.L.R.B., 517 U.S. 392, 398-99 (1996) ("When the

legislative prescription is not free from ambiguity, the administrator must choose between

conflicting reasonable interpretations. Courts, in turn, must respect the judgment of the agency

empowered to apply the law 'to varying fact patterns,' even if the issue 'with nearly equal reason

[might] be resolved one way rather than another'");   Contract Management, Inc. v. Rumsfeld,

434 F.3d 1145, 1147 (9th Cir. 2006) ("If, however, 'the statute is silent or ambiguous with respect

to the specific issue, the question for the court is whether the agency's answer is based on a

permissible construction of the statute.'") (quoting Chevron, U.S.A., Inc. v. Natural Res. Def.

Council, Inc., 467 U.S. 837, 843 (1984).

---

different courts has been cited as evidence that the statute is ambiguous and unclear.").

We turn first then to see whether the BOP has resolved the ambiguity, i.e., has interpreted the statute in its applicability to this specific fact pattern.   See Mills v. Quintana, 408 F.App'x. 533, 535 n.3 (3d Cir. 2010) ("The BOP is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, and it has developed detailed procedures for determining the credit available to prisoners. . . . see also BOP Program Statement 5880.28");   Lopez v. Terrell, 654 F.3d 176, 181 (2d Cir. 2011) ("Because the BOP is the agency charged with implementing § 3624(b), whether and to what extent we should defer to the BOP's interpretation turns first on whether the statute is ambiguous.").   Having already determined that the statute is ambiguous, and knowing that in order to resolve this ambiguity, our first recourse must be to see if the BOP has offered an interpretation of the statute, we turn then to see if the BOP has offered an interpretation or construction of the ambiguous statute.   If the BOP has offered an interpretation of the ambiguous statute, we must defer to that interpretation if the interpretation is reasonable.   O'Donald v. Johns, 402 F.3d 17, 174 (3d Cir. 2005) ("Because the meaning of § 3624(b) is ambiguous, we must defer to the BOP's interpretation if it is reasonable.").

We note that the BOP has indeed offered an interpretation of this statute.   In BOP Program Statement 5160.05,[10] the BOP cites 18 U.S.C. § 3585(a) as one of the bases for its

_____

[10]   While we recognize that the BOP Programs Statements are not entitled to Chevron deference, there is no reason why we cannot apply here, the analysis in Chevron which holds that the starting point for interpretative aids after determining that the statutory language is ambiguous, is to look first to the interpretation given to the statute by the agency charged with its application. In other words we think it proper to turn first to the BOP's interpretation, irrespective of the type of deference that is to be accorded to the agency's interpretation, given the BOP's expertise in sentencing calculation matters.   In fact, this appears to be the practice of the Court of Appeals

(footnote continued . . .)

statutory authority to issue PS 5160.05.   Id., at p. 3. ¶ 7(f).   In PS 5160.05, the BOP

contemplated the very situation presented on the facts of this case and resolved the issue as

follows:

> g. **Primary Jurisdiction.** When it has been determined an inmate was committed improperly to federal custody and primary jurisdiction resides with a state sovereign (i.e., the inmate was under jurisdiction of the federal sentencing court on the basis of a writ of habeas corpus ad prosequendum), institution staff, through the RISA, will make every effort to return the inmate to state custody.
>
> A return to the state means that the federal sentence should be considered as **not** having commenced since transfer to the Bureau was in error and the prisoner should have been returned to the state after federal sentencing as a required condition of the federal writ (see Crawford v. Jackson, 589 F.2d 693 (D.C. Cir. 1978)). The federal J&C will be lodged as a detainer, through the USMS, with the state authorities. If the federal court recommends concurrent service of the federal and state sentences, the case should be referred to the appropriate RISA.

In effect, Program Statement 5160.05[11] reveals BOP's interpretation of the statute, taking into

consideration the common law rule of primary custody which we presume Congress knew when

---

for the Third Circuit.   See Blood v. Bledsoe, 648 F.3d 203, 207-08 (2011) ("Section 3585 does not directly address the recalculation of sentences post-remand. However, the BOP has interpreted § 3585 in its internal sentencing manual, Program Statement 5880.28. The BOP's interpretation warrants 'some deference' so long as it sets forth a permissible construction of the statute.   According to that manual, '[i]n no case can a federal sentence of imprisonment commence [in accordance with § 3585(a) ] earlier than the date on which it is imposed.' See BOP Program Statement 5880.28, Sentence Computation Manual (July 20, 1999) available at http:// www. bop. gov/ policy/ progstat/ 5880_ 028. pdf, at 1–13.") (some citations omitted). The Court in Blood v. Bledsoe, went on to find the BOP's PS reasonable and deferred to it.   We take our lead from Blood v. Bledsoe and look first to see if the BOP has resolved the latent ambiguity that arises here which was different from the latent ambiguity that arose therein under Section 3585(a).

[11]   BOP's Program Statements are available on its website www.bop.gov.

it enacted Section 3585(a)[12] and which the BOP has incorporated in its program statements.

BOP's PS 5160.05 reveals that the BOP's interpretation of the statute is as follows:

> A sentence to a term of imprisonment commences on the date the defendant is [correctly deemed by the BOP, taking into account the doctrine of primary custody, to have been] received in [the BOP's primary] custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

The bracketed language is, in effect, how the BOP interprets Section 3585(a) as evidenced by PS 5160.05 and by BOP's adherence to that policy in this case.   We cannot say that this is an unreasonable interpretation since so many courts have agreed that this is a permissible construction of the statute, including the panel in Allen.   Allen, 236 F.App'x 783 (concluding that BOP's later determination of when the federal sentence commenced which corrected a prior erroneous BOP commencement date was "authorized by the statute").   See also Binford v. United States, 436 F.3d 1252 (10th Cir. 2006) (finding erroneous designation did not commence the sentence); Free v. Miles, 333 F.3d 550 (5th Cir. 2003) (same); Cannon v. Deboo, NO. CIV.A. 5:08CV69, 2009 WL 692148   (N.D.W.Va. March 13, 2009) (same).   Thus, we conclude that BOP PS 5160.05 "is a reasonable opinion by officials having greater knowledge of federal penal policy than we judges have, so we are inclined to defer to it."   Ramsey v. Brennan, 878 F.2d

---

[12]   Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. . . .   Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'") (citations omitted).

995, 996 (7th Cir. 1989).[13]

### c.  Agencies can correct their own errors.

We are bolstered in our finding that the BOP's construction of the statute is a reasonable

interpretation because the interpretation offered by BOP comports with a whole body of law that

permits administrative agencies to correct their own errors.   An administrative agency, such as

BOP, has, as a general rule, the inherent authority to correct its own mistakes. See Isle Royale

Boaters Ass'n v. Norton, 330 F.3d 777, 786 (6th Cir. 2003); Alto Dairy v. Veneman, 336 F.3d

560 (7th Cir. 2003); Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior

Foundry Co., 56 F.3d 844, 847 (7th Cir. 1995);   Gipson v. Young, No. 85-9158, 1986 WL 16497

(6th Cir. Feb. 6, 1986) (Error did not transform state prisoner into federal prisoner.). "Every

tribunal, judicial or administrative, has some power to correct its own errors or otherwise

appropriately to modify its judgment, decree or error." Alberta Gas Chemicals v. Celanese Corp.,

---

[13]   This finding that Petitioner's sentence only "commenced" on January 4, 2008, when he was
released from his Maryland state sentence to begin his federal sentence, disposes of Petitioner's
primary argument that the BOP erred in citing to Section 3585(b) to bar him being given credit
for the disputed time.   ECF No. 12 at 6 to 7.   Petitioner contends that his federal sentence
commenced upon its imposition, which was prior to the time he seeks credit for, i.e., prior to
September 11, 2006 through January 4, 2008 and so by its plain language, Section 3585(b) does
not apply, since it only bars double credit for time served **prior** to the commencement of the
federal sentence.   Petitioner insists that his sentence commenced on the date he was sentenced
by the federal court.   However, because we find that the BOP had the power to correct its earlier
erroneous date of commencement and was able to deem Petitioner's sentence to have
commenced on January 4, 2008 when Petitioner was returned to BOP custody from the Maryland
state authorities, Petitioner's argument is unpersuasive.   This is so because his sentence did not
"commence" on the earlier erroneous date but only commenced on the later date and thus the
disputed time period for which he seeks credit indeed constitutes "prior custody credit" under
Section 3585(b) which is subject to the prohibition against double credits.   The disputed time
having already been credited against Petitioner's Maryland state sentence may not also be
credited against Petitioner's federal sentence.

650 F.2d 9, 12 (2d Cir. 1981) (citing 2 K. Davis, Administrative Law Treatise §1809, 606

(1958)). <u>Cf</u>. <u>Sacred Heart Medical Center v. Sullivan</u>, 958 F.2d 537, 544 (3d Cir. 1992) ("an

agency is not locked into the first interpretation it espouses. Instead, the agency must offer a

"reasoned justification" for the change in its interpretation of a statute or a modification of its

policy."). This body of law permits administrative agencies to correct their own mistakes and

indeed, the United States Court of Appeals for the Third Circuit in <u>Barden</u>, found that the BOP

had power to correct its own erroneous determination that it did not have discretion to designate

a state prison *nunc pro tunc*.   Because we find the effect of the panel decision in <u>Boston</u> and

other cases of similar holding, is to prevent BOP from correcting its mistake in determining the

commencement of a federal prison sentence and such a holding seems in tension with the body of

law that permits Administrative Agencies to correct their mistakes, the better reasoned and more

persuasive position is that provided in <u>Allen</u> and cases of similar holding and <u>Boston</u> is less

persuasive.   Accordingly, we choose to follow the <u>Allen</u> opinion as being more persuasive and

find that the Petition should be denied based on the conclusion that the BOP's interpretation of

when Petitioner's sentence commenced under Section 3585(a) to be reasonable and hence we are

bound to give it effect.   See <u>O'Donald v. Johns</u>, 402 F.3d 172, 174 (3d Cir. 2005) ("Because the

meaning of § 3624(b) is ambiguous, we must defer to the BOP's interpretation if it is

reasonable."); <u>DiSalvo v. Whelan</u>, 955 F.2d 40 (Table), 1992 WL 33150 at *1 (4th Cir. 1992)

("BOP policy statements and their interpretations are entitled to deference, if reasonable.").

Lastly, even if we were to review this issue *de novo*, contrary to the constraints of our

standard of review, and decide this issue without any deference to the BOP, we would find as a

31

matter of law and fact,[14] Petitioner's federal sentence did not commence until at the earliest

January 4, 2008, when the Maryland state authorities released Petitioner from their primary

custody, at the expiration of his Maryland state sentence to the BOP in order to commence his

federal sentence, given that no matter what the federal authorities did, they were powerless to

divest the Maryland state authorities of their primary custody.   Flick v. Blevins, 887 F.2d at 782.

### D.   THE COMMON LAW "CONTINUOUS SERVICE RULE" DOES NOT COMPEL THE CREDIT PETITIONER SEEKS.

The remaining issue to be addressed relates to the common law "continuous service

rule"[15] which essentially provides that a sentence cannot be served in segments, i.e., once a

sentence starts it must be permitted to continue to run uninterruptedly.   Boston, 210 F.App'x at

192-93.

#### 1.   Petitioner's Sentence Did Not Commence Until the BOP Finally Determined it to Have Commenced and so His Federal Sentence Was Not Served in Segments.

First, it is not clear that that the common law rule even applies here because we have

already determined that it is the BOP, as the agency charged with the interpretation of Section

36585(a), that has the authority to determine when a federal sentence commenced.   Further, we

have concluded that the BOP has not abused its discretion in determining when Petitioner's

federal sentence commenced.   Thus, Petitioner's federal sentence did not commence until

---

[14]  See, e.g., Boston, 210 F.App'x at 192 (apparently giving some significance to the fact that both the Magistrate Judge and the District Court Judge found the commencement date to be different from the BOP's finding).

[15]   The continuous service rule is also sometimes referred to the "time at liberty" rule.   See, e.g., Heath v O'Brien, 647 F.Supp. 2d 618 (W.D.V.A. 2009).

January 4, 2008.   Because Petitioner's state sentence was credited for all of the time he erroneously spent in a BOP facility when he should have been spending time in a Maryland state facility, his federal sentence did not commence just because Petitioner was spending time in a federal facility and, given BOP's conclusion that his federal sentence did not commence until January 4, 2008, Petitioner is not being made to serve his federal sentence in segments because he federal sentence in the eyes of the law did not "commence" within the meaning of the Section 3585(a) until January 4, 2008 irrespective of where he was incarcerated.   Given the facts of this case, it can be simply said that Petitioner's state sentence was not served in segments but continuously served even while Petitioner was incarcerated in federal facilities, and that Petitioner's federal sentence did not commence until the BOP deemed it to have commenced on January 25, 2008.   Therefore, the federal sentence also was not served in segments.

### 2.   BOP'S Construction Takes Precedence Over the Common Law Rule.

Even if it could be said that Petitioner's federal sentence did start prior to the disputed time, it would not necessarily follow that the common law rule requires his federal sentence be credited with the disputed time because there is some question about the common law continuous service rule's ongoing vitality.   See, e.g., Espinoza v. Sabol, 558 F.3d at 88.   Even if however, the doctrine were not abrogated by the Sentencing Reform Act, it is not clear that it has continuing viability now.   We note that the common law rule of continuous service doctrine is not constitutionally required. Vega v. United States, 493 F.3d 310, 317 (3d Cir. 2007).   Nor apparently is it required by any federal statute.   See id.   In fact, the precise pedigree of the rule is simply not clear.   Some courts have characterized the doctrine as a "rule of interpretation."

33

Boston, 210 F.App'x at 193 n.2 (quoting Dunne v. Keohane, 14 F. d 335, 336 (7th Cir. 1994)).

What the doctrine is purported to be interpreting however was not made clear.   See, e.g.,

Stephens v. Sabol, 539 F.Supp.2d 489, 498 (D.Mass. 2008).   Other courts apparently have

referred to it as a general common law rule of criminal equity.   See Espinoza v. Sabol, 558 F.3d

at 88-89; Stephens v. Sabol, 539 F.Supp.2d at 497.

     Having decided that the continuous service rule is not constitutionally required, nor

statutorily required, we are left with it being simply a common law rule, whether described as a

common law interpretive rule or criminal equity rule, it is immaterial for present purposes.   We

note that there seems to be some tension between the common law continuous service rule and

the BOP's practices/policies given the fact that some Courts have held that federal sentences

commence when those courts determine them to have commenced notwithstanding the BOP's

contrary determination, and then those courts, applying the continuous service doctrine require

BOP to provide credit to the prisoners against their federal sentences relying upon the continuous

service rule, when the BOP declined to provide any such credit.   If, in fact, there is a

contradiction between the common law continuous service rule and the BOP's

policies/interpretations, it is not clear the court-created common law doctrine would or should

prevail.   Rather, it seems to be that the BOP's policies, to the extent they can be found to be a

reasonable interpretation of the statutes it is charged with administering, would trump the

court-created common law rule.   See National Cable & Telecommunications Ass'n v. Brand X

Internet Services, 545 U.S. 967, 985 (2005) ("Before a judicial construction of a statute, whether

contained in a precedent or not, may trump an agency's, the court must hold that the statute

unambiguously requires the court's construction."); <u>Levy v. Sterling Holding Co., LLC</u>, 544 F.3d 493, 502 (3d Cir. 2008).[16]   In other words, the BOP's policy, if there be such a policy that rejects the continuous service rule (as would seem to be the case given some of the case law) would trump the common law rule of continuous service to the extent that the BOP's construction of the 18 U.S.C. § 3585 is a reasonable one and to the extent that the Courts have not held that Section 3585 or some other statute unambiguously requires the common law continuous service doctrine.   The Court is not aware of any such case holding that the common law continuous service rule is required by any statute.

### 3. Even if Petitioner's Federal Sentence Did Start and Then Stop and Start Again, the Common Law Rule is Not Inflexibly Applied to All Sentences That Start and Stop.

Even if, contrary to the deference due to the BOP's determination of commencement of Petitioner's federal sentence, this Court could, in the first instance, determine that the Petitioner's sentence commenced sometime prior to when the BOP ultimately and definitively said it did, and even if the continuous service rule remains viable and is applicable and even if it trumps BOP's policies, the application of the common law rule would not require that Petitioner be credited with all time that Petitioner thereafter served in a federal prison or be credited with the disputed time.   <u>See</u>, <u>e.g.</u>, <u>Boston</u>; <u>Allen</u>.

---

[16]  While <u>National Cable & Telecommunications Ass'n v. Brand X Internet Services</u>, dealt with agency regulations entitled to <u>Chevron</u> deference and we here currently are dealing with BOP Program Statements that are not entitled to <u>Chevron</u> deference, it is not entirely clear why even under the lesser deference BOP's Program Statements are entitled to, such Program Statements ought not trump common law rules given the expertise of the BOP in sentencing matters and the complicated interwoven considerations that the BOP sentencing manual addresses and attempts to resolve in the face of many, many complicated sentencing situations.

Time and again, courts have rejected the applicability of the common law rule in situations such as this one where the convict is simply erroneously determined to be in the primary jurisdiction of one sovereign only to have the error corrected later and the convict returned from the one sovereign to which he was mistakenly transferred originally.   Upon this point, even <u>Boston</u> and <u>Allen</u> agree.   <u>Boston</u>, 210 F.App'x at 193 ("Where a prisoner's total time of incarceration in both federal and state prison will not be increased as a result of his mistakenly serving a portion of the federal sentence before completing his state sentence, the central concern of the [continuous service] rule is not invoked. Several courts have concluded that, where the danger animating the rule is not present, the common law rule need not be inflexibly applied."); <u>Allen</u>, 236 F.App'x at 783 (even accepting the claim that the petitioner was in fact a federal prisoner at the relevant time he was transferred to the state authorities, the continuous service "rule does not apply to Allen's circumstances. Its function is to prevent a governmental entity from 'abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations,' and it has no applicability when a prisoner is simply reclassified for the purpose of having him serve a state sentence before serving a consecutive federal sentence").   <u>See also</u> <u>Free</u>, 333 F.3d at 554-55; <u>Cox v. United States</u>, 551 F.2d 1096, 1099 (7th Cir. 1977); <u>Bintzler v. Gonzales</u>, 239 F.App'x 271, 275 (7th Cir. 2007). The general rule, derived from these cases, seems to require that the habeas petitioner carry a burden to show that he somehow was prejudiced by the error of the BOP and absent the petitioner showing any prejudice, the common law rule does not require crediting against the federal sentence any time following the erroneous commencement of the federal sentence.

In this regard, we note that Petitioner has not carried his burden to show that he was in any way prejudiced by the BOP's correction of its erroneous determination of when Petitioner's sentence first commenced.   He has not shown, as is his burden, that either his state sentences or his federal sentence were lengthened one iota, nor has he otherwise shown that he suffered any prejudice stemming from the BOP's error or its correction of the error.[17]

Given that there is no constitutional requirement that Petitioner be credited twice for time served when he already received credit against some sentence, in the absence of some federal statute that requires he be given credit and Petitioner points to none, we cannot see how the BOP abused its discretion in denying him such credit absent some showing by Petitioner of entitlement to such credit.   Petitioner has directed the court to nothing that grants him entitlement to such double credits nor do we find that the common law continuous service rule requires such crediting.   Accordingly, the Petition is dismissed.

---

[17] We note that the burden shifting rule of <u>Vega v. United States</u>, 493 F.3d 310 (3d Cir. 2007) is inapplicable here because there, the issue was a prisoner who was erroneously released at liberty from his prison sentence.   In contrast here, Petitioner was never erroneously released at liberty, rather he was merely transferred from one sovereign's prison to another and back again. Given the factual difference, we believe there should be a legal difference.   See <u>Stephens v. Sabol</u>, 539 F.Supp.2d at 498 ("This case does not present the same concerns as erroneous release cases, where a defendant is in the community but can be yanked into jail at the discretion of the jailer.").   In such a case as this where Petitioner was never released at liberty, we find the statement of burden in <u>Espinoza v. Sabol</u>, 558 F.3d 83, 89-90 (1st Cir. 2009) to be more applicable, namely, this is a habeas petition where the burden of persuasion as well as production should remain on the convicted and sentenced habeas petitioner to show prejudice from any errors committed by the government.   It is a Petitioner's burden to prove entitlement to any credit against his sentence.   See <u>Podhorn v. Grondolsky</u>, 350 F.App'x 618, 620 (3d Cir. 2009) ("Although Podhorn claims otherwise, we agree with the District Court that the BOP's calculations are correct and that Podhorn **has not set forth** credible evidence suggesting

(footnote continued . . .)

V.      **CONCLUSION**

For the reasons set forth herein, Petitioner must be denied credit against his federal sentence for the disputed time because he already received credit against his Maryland state sentence for that period of time and he is barred by 18 U.S.C. § 3585(a) from receiving double credit.   Hence, the Petition is denied.

The two pending Motions to Expedite, ECF Nos. 25 and 26, are denied as moot.

Appeals by a federal prisoner from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.   United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).   Hence, the Court makes no determination concerning a certificate of appealability.

BY THE COURT,

/s/Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Date:   July 20, 2012

cc:   STEVEN HARRIS
      41534-037
      FCI MCDOWELL
      101 FEDERAL DRIVE
      BOX 1029
      WELCH, WV 24801

      All counsel of record via CM-ECF

---

otherwise.") (emphasis added).